Let's move to the next case, C.W. v. Steve Smith. Ms. Mostondo, let's wait until everyone's at their place, okay? Mr. Boardman, get us to come forward and sit at the table. Make sure I've got the order right. Mr. Boardman, you'll argue before Mr. Brooks, is that right? Okay. All right. All right, Ms. Mostondo. May it please the Court, I am Terry Mostondo, and I'm representing C.W. in this case against two defendants. We have Piedmont City Schools, and we also have Coach v. Steve Smith. It's our position, as set out, I think, pretty well in all the briefing, that we believe the lower court was premature in its dismissal under 12b-6 of our Title IX claim against the schools, as well as the 1983 Equal Protection claim against Mr. Smith personally. Procedurally, we're here on a motion to dismiss, right? Yes, Your Honor. And then you have to have your allegations taken as true. Yes, Your Honor. And all reasonable inferences based on plausible facts are read in your favor, right? Yes, Your Honor. We're at the plausibility stage right now.  And just to briefly reiterate the facts. I mean, basically, your argument is that your client plausibly alleged that he suffered harassment based on sex stereotypes. Or sexual conduct. Yes, basically, real sexual conduct and sexual stereotypes. Those are our two. We think our two reasons that these allegations are plausible is violations of Title IX. It's inherently sexual conduct, regardless of whether it's harassment, even if it's same-sex. Yes, Your Honor. That's our primary argument, that this conduct was entirely sexual in nature. It involved private body parts. It involved attempted rape. It involved things like nipple twisting and rear-end touching and things like that. It wasn't simply calling him gay, but they did do that. There was physical touching. Yes, there was physical touching. And although our client was lucky. Of a sexual nature. Of a sexual nature. Although he was lucky. At least it could be reasonably inferred that that's what it is. Yes, we think from the allegations as plain. But it's emasculatory. Yes, that's the other idea. And I think that falls in line with the gender stereotyping that falls down to us from Price Waterhouse. Is if, you know, the older boys in question here are, you know, trying to emasculate him. They cannot be separated from his gender, male. So it's a simple sort of harassment based on gender emasculation theory that we believe we fled in the complaint. And that was the sole reason the lower courts dismissed it. Or the only copy it covered was whether or not this is actually Title IX covered. Whether it's based on sex. Title IX covers sexual harassment. Yes, since Davis. Since Davis was decided in 1999. You know, same sex. Not same sex, but student on student, peer on peer sexual harassment has been recognized under Title IX as actionable. So the only sort of leap we might be making here is the idea that boys can actually sexually harass boys under Title IX as well. One of the points. It seems to me one of the fundamental problems here is that the district court read it like a juror. The district court said, look, butt slapping, nipple twisting. This is the type of horseplay you would expect on a football team. Well, maybe a jury would think that too. But that's not something you decide on a motion to dismiss.  Right. That's exactly our position is that there's enough here. A jury might feel differently about what the motive is or different things. But in this situation, like at this stage of the motion to dismiss stage, you know, all those allegations are sexual in nature and they should all be taken as true. And it's not one of those sounds like bullying and teasing. But the district court judge really, really, in essence, found that it wasn't. It didn't. It failed to state a claim for sexual harassment under Title IX. Yes. Which is incorrect as a matter of law. Right. Yes, Your Honor. We believe this is just classic run of the mill sexual harassment as it's pled under Title IX and as a matter of law. Would you like to address the qualified immunity issue? Sure. What's significant about this case is that what happened to our client was not the first time that the school had been specifically put on notice that this situation with boys being raped in the locker room had actually happened in the actual locker room we're talking about in Piedmont. Two years before this situation happened in 2020, another boy was raped and actually sued the school for that. Also sued Coach Smith personally. So this is only two years earlier, which we think is fairly brief even in the high school world. And so knowledge is, we have more in this case, Your Honor, than just general knowledge that sometimes can give a coach or a school official qualified immunity. We have actual knowledge that this exact situation had happened in this locker room. Your theory is a deliberate indifference theory, right? Yes. It's a pure deliberate indifference under equal protection. And we also think that Hill supports our position as well in this because, you know, he had knowledge this practice was happening. He had knowledge it happened before. Your argument is Hill would at least establish that you can't do nothing in the face of that kind of harassment. Right. And that's, you know, that's what Hill is. It's about 1983 because in that case, in Hill specifically, the principal, you know, was the individual that the lower court, the 11th Circuit found could be held liable under 1983 because he knew some things about the misconduct in the past. He knew he didn't know enough before the rape happened in that case, which is also a rape case. But after that, he did nothing. And that's clearly established law, which would prevent Coach Smith from having qualified immunity. Yes, Your Honor. We think this is clearly established in the Hill case. In a very sort of oddly similar way, actually, considering the idea that, you know, in Hill, the principal didn't know before either the rape happens and then he does nothing. And in this case, I think we even have more than doing nothing because the way Coach Smith treated our client in public in front of the other students as pled in the complaint, sort of discounting it, calling him soft and saying that, you know, we also have harassment post the actual rape or attempted rape itself. The boys were all, you know, still making fun of him for chickening out of his own rape and basically, you know, telling him, slapping him and doing other things of a sort of a sexual, humiliating nature, even calling him the P word, which I don't like to say, an oral argument. But so that that is part of our allegations at the motion to dismiss stage. I guess I'll yield back the rest of my time for now. OK, Mr. Masada, we appreciate it. Mr. Boardman. Please, Court. Mark Boardman, I represent Coach Steve Smith. Coach Smith has won five state championships, 16 regional championships, been named coach of the year twice by his peers, coach of the year and a third time by the. I'm having a hard time understanding what that has to do with whether this pleading states a claim against your client. It doesn't state a claim against my client for three reasons, Your Honor. First, the attempted hazing or horseplay is not on the basis of sex. If it is on the basis of sex. Here we have a motion to dismiss and the complaint has allegations that are inherently sexual conduct in nature and that they qualify as if we take the allegations as true, sexual harassment, same sex sexual harassment, but it is sexual harassment nonetheless. What the court, what the law. I mean, are you giving a case that says otherwise? Well, the closest one is the Wolf versus Tinnate Circuit case, and that was on a jury charge. Wolf versus Fayetteville, Arkansas school cited by the board on its Title IX argument. I don't dispute and it's very clear that sexual harassment is not allowed. But what you have here is an act of hazing, which is what they plead repeatedly. And if it's an act of hazing and we can be sexual in nature, it can be sexual nature. It sure looks like it here to me. And you can make that in front of a jury. You can make that argument in front of a jury. But here it's a Rule 12B-6, which is a motion to dismiss. So their allegations are plausible under Title IX. And it looked to me like the district court judge did not believe that they stated a claim under Title IX, which is incorrect as a matter of law. Well, because the way he interpreted it, let me analyze it from the way they've taken it. They have claimed that an assault is emasculating. For a young male, any assault. This particular assault, were they key another male student? That strikes me as emasculatory, or at least a jury could reasonably infer that it is. Remember, though, that it did not happen. It was an alleged thing. We're going to key you, right? That's what he says. And then the student attacks, justifiably, not arguing that he shouldn't have, attacks the other students and gets out, and it never happens. So it is a threat, an attempted hazing, a threat of hazing, but it's not an actual hazing. So here's where the problem comes in. Now, what if emasculating is what we say for males, what do we say for females? The group of mean girls says a girl is ugly. Is that somehow Title IX because it's attacking her because some perception of femininity is beauty, just like some perception of masculinity is? This is a physical assault. This isn't just mean girls saying that. It didn't get that far. I mean, it didn't get that far. He wasn't beaten up by four students. He then attacked the students to get out, but it never got to be sexual attack. I thought he tackled one to get out, but he was beaten up by the four students. I thought what was beaten up is what is alleged. No, I'm not disputing that. There's a physical assault here, isn't there? Right, and that's why it's a negligent supervision case and an assault case. It's not a sexual assault case. So, for example, the same argument with hitting the buttocks. The argument is that's because that's a sexual nature. Well, so is paddling. So does that mean that a teacher who paddles a student, obviously a state agent, is semi-committing a Title IX or sexual assault violation by paddling? Again, counsel, the issue I'm having is you're making arguments and you're asking us to make inferences. The problem is this is a Rule 12b-6 motion that's currently before us. And again, these are arguments that you can make in front of a jury. It is not appropriate or proper to make these arguments to either this panel or to the district court judge on a Rule 12b-6. There's no response to that. Right, I agree. It looks like I'm going to get that chance, but I've got to defend the federal judge. I'm just trying to defend the judge who gave me an order, okay? Let's be reasonable about it. That's my goal. So my problem is this, that if this is a sexual assault, then look at what is going to happen with any other type of litigation, prison litigation, school litigation, whatever, that any time someone alleges it's emasculating or throws some type of this on the third opportunity, by the way, because the judge gave them three opportunities. By the time you get to the third opportunity, you keep throwing sexual or other arguments in there. It now becomes a Title IX or a substitute process. I'm not saying that it's correct or not correct, but this doesn't have to be decided on the sexual stereotyping because there's inherently sexual conduct that has been alleged. What the trial judge said is that it is hazing that happens to be on the buttocks. Remember, there's no anti-homosexual bias, as the judge went through, because the student says he's straight. In fact, there's no, the other students are discussing gay family members, according to, that they don't have an anti-homosexual bias. In fact, the only thing that appears to be is the way the plaintiff pleads. The plaintiff has an anti-homosexual bias because he doesn't want to be, the one word is gay at that point. But that, again, is not necessarily, that's teasing a name calling, which Davis versus Monroe County, the U.S. Supreme Court told us, is something that's going to happen in the schools. And, of course, you had to deal with the same issue the 11th Circuit did in the Hawkins versus Sarasota case, where you said, the real world of school discipline is a rough and tumble place where students practice newly learned vulgarities, erupt with temper and tease and embarrass each other, share offensive notes, flirt, push and shove in the halls and grab and offend. Students often engage in insults, teasing, shoving and gender specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and mere name calling among students where these comments target differences in gender. Mr. Boardman, since I think you're representing Coach Smith, why don't you address how it's not clearly established under Hill? So two things. Substantive due process, for the substantive due process claim, that fails because, for three reasons. First, there's no deliberate difference. There was action taken. Let me tell you the five steps that were taken so that you, first, it didn't ever happen again with regard to any type of assault. Second, Coach Smith met with the principal and the student. Third, Coach Smith spoke to the team. Four, Coach Smith brought the plaintiff back onto the team. In a way that was emasculatory in and of itself. Well, that's their allegation. But remember, that's a negligence standard now. He had to take some type of action of deliberate indifference. And as long as he took an action, then we're not going to, by qualified immunity, we're not going to second guess that action. You could reasonably infer that this was no action at all. They don't allege that. I mean, and we've established that. In fact, they've alleged things that showed that he did take action. And then the other reason with regard to that there's not a due process violation is the notice issue is two different students, two different times, two years before. In high school, everything rolls over every four years at a minimum anyway. So there was the longstanding tradition argument doesn't apply and therefore qualified immunity. Because there's not a case that says in this type of situation, you're supposed to take some particular type of action. In fact, the Alabama Supreme Court is replete with cases where the lack of supervision, i.e. not being in the locker room, because that's the argument. He wasn't in the locker room. He didn't stop it in the locker room. That was the initial argument, that he does not have to be there, that students of this age do not need to be personally supervised. These are kids who drive, who have every opportunity to do types of things. You would expect them to follow the law. When he tells them that you're not supposed to assault other students, how is he supposed to therefore be liable when those people who are not his agents assault? So for that reason, the qualified immunity and no substantive due process violation, yes, that the trial court be affirmed. Thank you. Mr. Brooks. May it please the court. My name is Taylor Brooks and I represent the Piedmont City School District. The only claim in the complaint against the school district is a Title IX claim. And at the motion to dismiss phase, I argue two different reasons why it should have been dismissed. One, on the basis that it wasn't on the basis of sex. And I think that's what we've discussed in the previous argument. And number two, that it doesn't state a plausible claim that it was sufficiently severe and pervasive. And I'd like to get to both of them because I believe you can affirm the court on any reason that's supported by the record. First, on the basis of race, I want to clear up. I don't believe that there is any allegation in the complaint that they acted based on gender stereotypes. They referred to homosexuality, did they not? Well, they never called. Well, they discussed homosexuality, but there's no allegation that they called him gay. What do you think the point of that was? What do I think the point of that was? Couldn't a reasonable jury infer that they were forcing him to look at another player's genitals, talking about gay sex, gay family members, that that's a sex stereotype for this lighter weight football player, right? Freshman football player. Well, what they plead in their complaint is that he said he was that he falls outside of the manly man stereotype. That I don't I don't think they're what the complaint says is that he said he was a straight male and that they basically just wanted to emasculate or demean him. There's not an allegation that they perceived him. Now, the context of that in the complaint, your honor, is that they is that he had reported the assault and they were retaliating against him for the report of the assault. There's no allegation that they called him that in connection with the locker room incident. But in my, you know, and I don't want to restate what I wrote in my brief on this issue, but I would like to also talk about the other issue because there's a lot of case law, and I've cited it, which says to meet the severe and pervasive standard is a very high standard to meet. And in that also that acknowledges like that in school contact school context, that, you know, that some type of sexual interaction among students and sexual connotations and sexual talk is to be tolerated. I mean, I've cited short amount of time, the harassment so bad he decides to quit the team and then eventually leaves the school. But because it only went on for a short while, your argument is it's not severe pervasive. Well, I think that if you compare it, if you compare it with other case law, I know there's I know there's there's one case. I think I cited Doe v. Gwinnett where where the and I know that's a district. It's a district court case within the 11th Circuit. But where particularly persuasive. Right. Just like this is a district court opinion within the 11th Circuit that we're reviewing today. But when I when I when I read it in that case, there was an act there was an sexual. Here there was a threat of a sexual assault, which which just turned into a regular assault. But in Hill, I mean, maybe I'm incorrect, but I thought in Hill there was just two weeks of harassment and that we deemed that that satisfied severe and pervasive element. Well, in the Hill case, I mean, the student was was raped in the bathroom. In that case, we also said we do have to consider the constellation of surrounding circumstances. Right. So we consider those circumstances in this case. And again, given the procedural posture, drawing emphases in favor of the plaintiff. How is that not sufficiently severe? What's been alleged? Well, number one, you know what? What we have here is one instance of nipple twisting. One instance of grabbing somebody by the arm to look at their genitals. A threat, a threat of a sexual assault, which wasn't didn't actually turn into a sexual assault. It just turned into a regular assault.  Well, they attempted the sexual assault. Well, it doesn't. I mean, I guess you hear you hear that. I mean, that's what that is. Looking at someone's like trying to attempt to look at someone's genitals. How is that not like a sexual attack? I mean, just I mean, it's a it's a it's a I would say, of course, you have to look at the context. And I know in cases like and I believe I believe it's on call case where they talk about. This is like a locker room where like, you know, you undress and people are. I mean, this is not like I'm trying to look at your genitals and you're in the courtroom. I mean, and you're wearing clothes. I mean, this is a locker room situation where where people undress. Right. And that stuff like that, I would say is type of course play that goes on in locker rooms. That's the kind of things that are described as that may not, you know, in the adult world would be tolerated. But that there's got to be a jury argument. Yeah. Well, well, I mean, I think that the we have to take the real question is, is did it cross the line? And could a jury infer that it did? And it looks to me like at least what's alleged here, that at least there's enough. Might be you could make that argument. This is this is what happens in locker rooms. It's just football players. It's not really sexual nature. Make that argument. But it sounds to me like that's an argument for a for a jury, not a district judge. I understand, Your Honor. I guess it's just I guess it's our position that even if you take all of that, all of the allegations that are true, they don't state a plausible claim of severe and pervasive harassment since there was no actual sexual assault. And you have nipple twisting and butt slapping the kind of I mean, butt slapping in a football locker room. I don't see how that's very remarkable. And then it insults to somebody because they reported the the alleged assault. I just think in the totality, when you look at the other severe and pervasive cases, that this doesn't reach the line because I understand. I understand your argument. Thank you. It's not that you say five minutes. I did. Thank you, Your Honor. A few notes I want to say about what Mr. Boardman was arguing about the Wolf case from the Eighth Circuit. That was actually a jury trial. So, you know, those allegations, although they may be similar, you know, in some ways. And the plaintiff may have lost that case before a jury in the Eighth Circuit. You know, we aren't even anywhere near the, you know, the idea of a jury trial yet. We're just trying to get past the motion to dismiss stage. So, you know, the Wolf is interesting. It basically is about whether or not the court charged the jury correctly after, you know, after the fact, after the plaintiff had already lost it, had the opportunity to go before a jury. You know, of course, we take the position that the fact that the rape didn't actually happen doesn't make it any more, any less sexual in nature, you know, for purposes of Title IX and 1983. They made the argument at the lower court, and that was always our position, of course, that holding keys, telling someone you're going to rape them while cornering them in the locker room, trying to rape them, you know, we, of course, take a position that that meets the standard of being severe and pervasive and offensive, which are the standard under Davis. And the language in Davis, I think, is important about, you know, what does not comply with Title IX as far as what harassment can mean. And so it's insults, banter, teasing, shoving, pushing, and gender-specific conduct. I mean, those are the general sort of exclusions out under Title IX, under Davis, that may not reach the level of severe and pervasive. But, you know, of course, it's our position, as we've argued before, that this type of conduct is far beyond just teasing, hair-pulling, anything like that the kids do in the schools. This is attempted rape, and I just don't know any other way to sugarcoat it than say that, along with other emasculating conduct before and after the attempted rape. So, based on the complaint we have, we think that's very plausible, plausibly beyond just horseplay in the locker room or hazing. So, and I think what Mr. Boardman said was interesting about, you know, if girls make fun of each other not meeting the sexual stereotype of beauty, you know, I think that can also violate Title IX. That's what the Higgins case is about, that they've cited. That case they cited for the proposition of what happened after the rape, you know, not only being retaliatory. But in Higgins, the actual conduct was sexual in nature, and it was girls making fun of another girl because of the way she looked and some other conduct like that. And one of the points that Mr. Brooks made about the school is the use of the P-word. Again, I hate to say that in oral argument, but, I mean, that's what was said in this case. The allegation in the complaint is dual. The allegation in the complaint actually says that they used the P-word both because he reported the attempted rape and to make the point that he should have just acceded to the rape if he didn't want to be called the P-word. And so I don't think you can just separate the idea that retaliation, it was just retaliation after the attempted rape happened because the same kind of sexual emasculating behavior continued. And that's what the allegations in the complaint are. And we think a jury could reasonably infer that, that that was all sexual conduct under Title IX, not just retaliation. And the rear-end slapping comment, I thought was, the allegations in the complaint about the rear-end slapping did not just occur in the locker room. It wasn't on a football field where they're congratulating each other for doing a good job. Instead, basically, the allegation in the complaint is they slapped him after he, they tried to rape him with keys. Then they slapped his rear end, and they also did it in the classroom in the school. So just to sort of, I guess, correct the record on that. I just want to say that we do think the butt-slapping, even though I understand the football players may do that in some circumstances, and it's not Title IX actionable, of course. In this situation, it was far more than that. It was a comment on the fact that, you know. Well, it was the context because there was already a sexual nature in that context. Right. It's just, it's exactly what you have to do. You have to kind of look at all the context to decide whether or not it's severe, pervasive, and offensive under Davis. So, having said that, my time is almost over. No one has any more questions for me. I don't hear any. Okay, thank you very much. Thank you.